BERTRAM FIELDS (SBN 024199)
BFields@ggfirm.com
GREENBERG GLUSKER FIELDS
 CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Plaintiff
Stanley A. Weston

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY A. WESTON,<br><br>           Plaintiff,<br><br>   v.<br><br>HASBRO, INC.,<br><br>           Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff for his complaint, alleges the following:

**The Parties**

1. Plaintiff ("Weston") is a resident of California and of this Judicial District.

2. Defendant is a Delaware corporation doing substantial business in California, in this Judicial District and throughout the world as a manufacturer and distributor of toys and related products. Defendant was formerly called "Hassenfeld Bros., Inc."

**Jurisdiction and Venue**

3. This Court has original jurisdiction over plaintiff's claims, in that they arise under the Copyright Act 17 U.S.C. § 101 et seq. This court also has diversity

jurisdiction under 28 U.S.C. § 1332, in that the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. Venue in this Judicial District is proper under 28 U.S.C. § 1391(b)(1) and (d) in that defendant is a corporation doing substantial business and subject to personal jurisdiction in the State of California and in this Judicial District and, accordingly, is deemed to reside there, and under 28 U.S.C. § 1391(b)(2) in that a substantial part of the acts and circumstances giving rise to this action occurred in this Judicial District.

## **Factual Allegations**

5. During 1963, Weston created the original idea of manufacturing and selling male action figures wearing and carrying miniaturized versions of the uniforms, insignias, emblems and equipment of each of the different branches of the United States armed forces (the "Outfitted Action Figures"). The Outfitted Action Figures envisioned by Weston were to have movable parts, so that they could be placed in various action poses. Weston believed his concept had particular commercial appeal because, once the Outfitted Action Figures were purchased, the buyers would continue to purchase new and different uniforms, insignias, emblems and equipment for them.

6. Early on, at Weston's expense, he reduced a part of his concept to tangible form by assembling on sheets of "oaktag" numerous examples of the colorful insignias and emblems he envisioned as a key part of his concept.

7. Defendant (then named Hassenfeld Bros., Inc.) was, and still is, in the toy business. Weston presented his idea for the Outfitted Action Figures and his oaktag sheets showing examples of their insignias and emblems to Donald Levine, defendant's Vice President of Research and Development. Weston described his Outfitted Action Figures to Levine and explained that, just as razor manufacturers made their money from the sale of blades, once a buyer owned one of his Outfitted Action Figures, the continued sale of different uniforms, insignias, emblems and

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

equipment, such as those shown on Weston's oaktag presentation, would provide a steady stream of revenue. Levine told Weston his concept was great and would be of significant interest to defendant. Weston had no facilities to create prototypes of his Outfitted Action Figures, but defendant did; and, when asked by Weston, defendant was willing to undertake that. Weston authorized and directed defendant to make initial drawings of his Outfitted Action Figures and then, if the initial drawings were approved, to fabricate prototypes of his Outfitted Action Figures wearing and carrying their miniaturized uniforms, insignias, emblems and equipment, as he had described them and had shown in his oaktag presentation. Levine told Weston that, if Weston approved what defendant made, he was sure defendant would want to buy the rights from Weston. Weston offered to pay any expense incurred by defendant in fabricating the prototypes, but Levine said defendant could recoup any such expense in setting the purchase price of the rights. Weston agreed, however, that, if Weston did not sell defendant the rights, Weston would reimburse defendant for any expense it incurred in making the prototype action figures. Thus, Weston assumed the entire burden of any such expense.

8. Thereafter, with Weston's authorization and at his direction and expense, as alleged hereinabove, defendant reduced the balance of Weston's concept to tangible form, first by making drawings pursuant to Weston's direction, which Weston approved, and then by fabricating Outfitted Action Figures wearing and carrying their miniaturized uniforms, insignia, emblems and equipment, like the insignia and emblems on Weston's oaktag presentation, all as Weston had described and directed.

9. Weston did approve the Outfitted Action Figures fabricated by defendant at Weston's instance and expense, and praised defendant for making them just as he had described and directed. Levine replied "You're going to make a ton of money from this" and told Weston that defendant definitely wanted to buy from Weston the rights in his Outfitted Action Figures. The parties considered

Weston to be the creator and author of the Outfitted Action Figures; and, based on the foregoing facts, Weston was, in fact, the creator and author of those figures. Levine consistently referred to Weston as the creator and owner of the rights in the Outfitted Action Figures, which he said defendant wanted to buy. Neither Levine nor anyone else from defendant made any claim that defendant already owned any such rights or that all such rights were not owned by Weston or that Weston was not the creator and author of the Outfitted Action Figures, or that defendant could or would manufacture or market the Outfitted Action Figures without buying the rights from Weston.

10. Defendant then prepared, and the parties executed, a written contract (the "Contract"). The Contract was signed more than 50 years ago, in or about February, 1964. Unfortunately, Weston has not been able to locate a copy; and Weston is informed and believed and, on that ground, alleges that defendant has also been unable to locate a copy. Weston's recollection is that, in the Contract, he granted to defendant the copyright and all copyright interests in the Outfitted Action Figures wearing and carrying their miniaturized uniforms, insignias, emblems and equipment, as Weston described them to Levine and demonstrated with his "oaktag" presentation and which defendant put in further tangible form at Weston's instance and expense, as alleged hereinabove. Weston's understanding and recollection was that any expense incurred by defendant in doing so was factored into the purchase price paid by defendant pursuant to the Contract, so that any cost to defendant in reducing the balance of Weston's concept to tangible form was ultimately borne by Weston. Thus, Weston's concept was reduced to tangible form initially by him in his oaktag presentation and, subsequently, at his direction, instance and expense, by defendant.

11. During 1964, having received the foregoing grant from Weston, defendant registered the copyright in Weston's Outfitted Action Figures, including, as the copyrighted material, the figures themselves and also the uniforms, insignias,

emblems and equipment they wore and carried. Since 1964, acting pursuant to the grant from Weston in the Contract, defendant has successfully made and marketed, under the trade name "G.I. Joe," Weston's Outfitted Action Figures wearing and carrying their miniaturized uniforms, insignia, emblems and equipment, all as conceived by Weston and reduced to tangible form by him and by defendant at Weston's direction, instance and expense. From time to time since 1964, defendant has made some changes in the size and appearance of the Outfitted Action Figures marketed as "G.I. Joe," creating derivative works based on the original copyright and copyright interests granted from Weston to defendant. But, at all times, the Outfitted Action Figures marketed as "G.I. Joe" remained substantially similar to the Outfitted Action Figures created by Weston, the copyright and copyright interests in which were granted by Weston to defendant in 1964 pursuant to the Contract, so that, if third parties tried to market such figures, even with the changes defendant subsequently made, they would have infringed the original copyright and copyright interests granted by Weston to defendant in 1964.

12. On January 8, 2015, Weston served on Hasbro, by first class mail from Los Angeles, the written Notice of Termination, a copy of which is attached hereto as Exhibit "A" and incorporated by reference herein, stating that, upon expiration of the statutory period, Weston's transfer of renewal copyrights and all of defendant's copyrights and copyright interests in and to the Outfitted Action Figures, including the miniaturized uniforms, insignias, emblems and equipment worn and carried by such figures would terminate, pursuant to 17 U.S.C. § 304(c), as of February 29, 2020. Plaintiff is informed and believes and, on that ground, alleges that the value of the copyright interests transferred to defendant by Weston in 1964, which Weston seeks, by his notice, to recapture, exceeds $100 million.

13. By reason of the foregoing facts, an actual controversy exists between the parties. Weston, who is 82 years old, contends that his Notice of Termination is valid and effective and that, in five years, when the statutory period expires, the

transfer of copyright and copyright interests in the Outfitted Action Figures wearing and carrying their miniaturized uniforms, insignias, emblems and equipment by Weston to defendant in 1964 will terminate, and all copyright and copyright interests therein will revert to Weston or his heirs or representatives.  Weston is informed and believes and, on that ground, alleges, based on communications from defendant to Weston in California, that defendant denies that Weston has any such termination right and claims that, even on expiration of the statutory period, defendant will remain the sole owner of all copyright interests in and to the Outfitted Action Figures defendant has been marketing for decades as "G.I. Joe."

A declaration by this Court is necessary so that the parties can know their respective rights and obligations.

WHEREFORE, plaintiff prays judgment as follows:

1. For a declaration that plaintiffs' notice attached to the Complaint as Exhibit "A" is valid and effective and that, as of February 29, 2020, all of defendant's copyrights and copyright interests in and to the Outfitted Action Figures marketed by defendants as "G.I. Joe," wearing and carrying their miniaturized uniforms, insignias, emblems and equipment, will be terminated and will revert to plaintiff or his heirs or representatives; and

2. For costs of suit and such other relief as the Court shall deem proper.

DATED:  September 15, 2015        GREENBERG GLUSKER FIELDS
                                  CLAMAN & MACHTINGER LLP


                                  By: /s/ Bertram Fields
                                      BERTRAM FIELDS (SBN 024199)
                                      Attorneys for Plaintiff Stanley A. Weston

93166-00002/2374034.1                   6                 COMPLAINT FOR DECLARATORY RELIEF

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, plaintiff demands a trial by jury on all issues so triable.

DATED: September 15, 2015

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP

By: /s/ Bertram Fields
BERTRAM FIELDS (SBN 024199)
Attorneys for Plaintiff Stanley A. Weston

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

93166-00002/2374034.1

7

COMPLAINT FOR DECLARATORY RELIEF